**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| DANAHER CORPORATION, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2026-0428-BWD |
| MARTIN STUMPE, an individual, | ) ) | |
| Defendant. | ) ) | |

## ORDER DENYING MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

WHEREAS:

A.      Defendant Martin Stumpe ("Defendant") has moved for certification of interlocutory appeal (the "Application") of this Court's May 29, 2026 oral ruling denying Defendant's motion to dismiss and granting plaintiff Danaher Corporation's ("Plaintiff" or "Danaher") motion for preliminary injunction (the "Ruling").  Def. Martin Stumpe's Appl. for Certification of Interlocutory Appeal [hereinafter Appl.], Dkt. 45; Tr. of May 29, 2026 Telephonic Bench Ruling on Def.'s Mot. to Dismiss and Pl.'s Mot. for Prelim. Inj. [hereinafter Tr.], Dkt. 44.

B.      As set forth in the Ruling, Danaher is a Delaware corporation in the life science and technology industry.  Tr. at 4:18–21.  In 2024, Danaher hired Defendant, a resident of Washington state, as its Chief Data and AI Officer.  *Id.* at 4:22–5:1.  In that role, Defendant led the formulation and implementation of Danaher's company-

wide data and artificial intelligence strategy, where his responsibilities encompassed data infrastructure, information technology, software, artificial intelligence innovation and rationalization, machine learning platforms, and the deployment of technological capabilities throughout Danaher's portfolio of operating companies. *Id.* at 5:6–15.

C.     As a condition of his employment, on March 20, 2024, Defendant and Danaher executed a contract entitled "Danaher Corporation and Its Affiliated Entities Agreement Regarding Competition and Protection of Proprietary Interests" (the "Agreement"). *Id.* at 5:19–24; Verified Compl., Ex. 1 [hereinafter Agt.], Dkt. 1. Section 2(b) of the Agreement includes a noncompetition covenant that states:

> Non-Competition.  During [his] employment [Defendant] will not engage in any other employment, occupation, consulting or other business activity that competes with or conflicts with [his] obligations to the Company.  Without limiting the foregoing, for 12 months after [his] employment termination, [Defendant] will not directly or indirectly, on behalf of [him]self or in conjunction with any other person or entity:
> . . .
> (2)     work in the Restricted Territory for any person or entity that sells Competing Products in any role: (i) that involves responsibilities related to the sale of Competing Products; or (ii) developing or implementing strategies to compete with the Company with respect to Competing Products; or (iii) directly or indirectly supervising or managing employees or other personnel who compete with the Company with respect to Competing Products; or (iv) utilizing or disclosing Confidential Information.

Agt. § 2(b)(2).  Section 17 of the Agreement includes Delaware choice of law, exclusive venue, and consent-to-jurisdiction provisions, as follows:

2

> This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without applying its conflict of laws principles. The exclusive venue for any litigation based upon any fact, matter or claim arising out of or relating to this Agreement, including any contractual, statutory, tort, or common law claims, shall be the state or federal courts located in Delaware and I hereby consent to any such court's exercise of personal jurisdiction over me for such purpose.

*Id.* § 17.

D.      In October 2025, Danaher promoted Defendant to the position of Chief Technology and AI Officer. Tr. at 6:7–9. In that role, Defendant oversaw enterprise software development, AI architecture and integration, technology roadmap development, and strategic technology planning at the portfolio level. *Id.* at 6:9–12. Defendant reported directly to Danaher's CEO and was a member of the company's senior executive leadership team. *Id.* at 6:12–14. Defendant directly supervised eleven senior leaders, including seven vice presidents. *Id.* at 6:15–16. Defendant's work required extensive domestic and international travel to engage directly with Danaher personnel and partners around the globe. *Id.* at 6:16–19. His work territory encompassed everywhere Danaher and its operating companies operate, including the United States and across the more than 60 countries in which the company maintains a presence. *Id.* at 6:19–23. Defendant regularly attended meetings of Danaher's board of directors, as well as other senior executive leadership team meetings, where matters of enterprise-wide strategy, including competitive

3

intelligence, product development roadmaps, and acquisition planning, were discussed. *Id.* at 7:3–8.

E. On March 11, 2026, nonparty Siemens Medical Solutions USA, Inc. ("Siemens") extended Defendant a written offer of employment as Chief Technology Officer with a June 1 start date. *Id.* at 7:9–13, 7:21–22. Danaher considers Siemens to be among Danaher's most significant and direct competitors, competing with Danaher and its portfolio companies across multiple business segments, most notably clinical diagnostics, hospital laboratory systems, molecular and point-of-care testing, and related laboratory automation and digital workflow solutions. *Id.* at 7:13–20.

F. On March 30, Danaher initiated this action through the filing of a Verified Complaint and moved for expedited proceedings in advance of its forthcoming motion for preliminary injunction (the "Motion for Preliminary Injunction"), through which Danaher sought an order preliminarily enjoining Defendant from beginning employment as Siemens' Chief Technology Officer on June 1 in breach of the noncompetition provisions in the Agreement. Verified Compl., Dkt. 1; Pl.'s Mot. for Expedited Proceedings, Dkt. 2; Pl.'s Mot. for Prelim. Inj., Dkt. 16. Defendant responded with a motion to dismiss (the "Motion to Dismiss"). Def.'s Mot. to Dismiss, to Stay, and for Statutory Remedies, Dkt. 5.

4

G.    At an April 16 hearing, the Court ordered expedited proceedings in advance of the Motion for Preliminary Injunction.  Dkt. 13.  At the parties' request, the Court agreed to hear combined oral argument on the Motion to Dismiss and Motion for Preliminary Injunction.  Tr. at 8:15–18.

H.    The Court heard combined oral argument on the Motion to Dismiss and Motion for Preliminary Injunction on May 22.  *Id.* at 8:19–20; Dkt. 38.  With regard to the Motion for Preliminary Injunction, although the Court did not limit discovery in advance of the hearing, the parties agreed to submit limited evidence through affidavits and documentary exhibits attached to briefing.

I.    Because the parties requested a decision before June 1, the Court held a telephonic hearing on May 29 to deliver the Ruling.  Dkt. 39.

J.    The Ruling denied the Motion to Dismiss.  Tr. at 8:21–23.  Defendant sought dismissal on two grounds: (1) the Court lacked personal jurisdiction over him, and (2) the action should be dismissed for improper venue.  *Id.* at 8:24–9:4. The Ruling rejected both arguments.  With respect to personal jurisdiction, Section 17 of the Agreement reflects Defendant's consent to personal jurisdiction in Delaware courts.  *Id.* at 10:9–21; Agt. § 17.  Defendant argued, however, that Washington's fundamental public policy interest in regulating noncompetition provisions within the state compels application of Washington law, and under Title 49, Section 49.62.050 of the Revised Code of Washington,

5

A provision in a noncompetition covenant signed by an employee or independent contractor who is Washington-based is void and unenforceable:

(1)     If the covenant requires the employee or independent contractor to adjudicate a noncompetition covenant outside [Washington] state;

(2)     To the extent it deprives the employee or independent contractor of the protections or benefits of this chapter; or

(3)     If it allows or requires the application of choice of law principles or the substantive law of any jurisdiction other than Washington state.

RCW § 49.62.050.  Defendant argued that Section 17, which includes Delaware choice of law, exclusive venue, and consent-to-jurisdiction provisions, is void under that section. Tr. at 11:2–5. The Ruling assumed, without deciding, that Washington law applies, but nevertheless rejected Defendant's argument, because while Section 29.62.050 may invalidate the choice of law and exclusive venue provisions in Section 17, the statute does not purport to prohibit a party from consenting to personal jurisdiction in the courts of another state. *Id.* at 12:22–13:17.[1]

K.     The Ruling then granted the Motion for Preliminary Injunction. Although Defendant argued in connection with the Motion to Dismiss that Washington law should govern, both parties relied exclusively on Delaware law in

---

[1] With respect to improper venue, the Ruling concluded that the *Cryo-Maid* factors did not support dismissal or a stay of the action. *Id.* at 16:19–19:22.

connection with the Motion for Preliminary Injunction. *Id.* at 20:20–24.[2] Applying Delaware law, the Ruling concluded, based on the preliminary record submitted in connection with the motion, that Danaher established it is likely to succeed on the merits of a claim for anticipatory breach of the noncompetition provision in Section 2(b) of the Agreement. *Id.* at 21:17–31:2. As part of that analysis, the Ruling concluded Danaher is likely to succeed in demonstrating that Section 2(b) is enforceable. *Id.* at 26:10–31:2. The Ruling further concluded that Danaher faced irreparable harm in the absence of a preliminary injunction, and the balance of the equities supported entry of a targeted preliminary injunction prohibiting Defendant from beginning work as Siemens' Chief Technology Officer on June 1. *Id.* at 31:3–33:12.

L.      Defendant filed the Application on June 9. Appl., Dkt. 45. Danaher opposed the Application on June 22. Pl.'s Opp'n to Def.'s Appl. for Certification of Interlocutory Appeal, Dkt. 50.

NOW, THEREFORE, IT IS HEREBY ORDERED, this 26th day of June 2026, as follows:

1.      Upon review of the Application, the Court concludes that it should be DENIED. Supreme Court Rule 42 governs applications for interlocutory appeals,

---

[2] As the Ruling points out, both parties agreed that the result of the Motion for Preliminary Injunction should be the same under Delaware or Washington law. *Id.* at 21:1–10.

cautioning that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources." Supr. Ct. R. 42(b)(ii). "Applications for interlocutory review are addressed to the sound discretion of this Court and are accepted only in extraordinary circumstances." *Robino-Bay Ct. Plaza, LLC v. W. Willow-Bay Ct., LLC*, 941 A.2d 1019 (Del. 2007) (TABLE).[3]

2.      Supreme Court Rule 42 establishes a two-step test for deciding whether to certify interlocutory appeal. Supr. Ct. R. 42(b). The Court must first determine whether "the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment." *Id.* 42(b)(i). If that requirement is met, the Court will analyze eight factors to assess whether "there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal." *Id.* 42(b)(ii).

3.      The substantial-issue requirement is met when a ruling "decides a main question of law which relates to the merits of the case, and not to collateral matters." *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008). Defendant argues that the Ruling decided a substantial issue, namely, "whether a Washington-based defendant can be compelled to defend an action in Delaware

---

[3] Though this decision referred to the Supreme Court in its use of "this Court," trial courts exercise that same discretion in recommending whether interlocutory appeals should be certified.

8

through which a plaintiff seeks to enforce a noncompetition covenant and agreement that contained a consent to-jurisdiction clause embedded within a choice-of-law-and-forum provision that is void under the Washington Act." Appl. ¶ 4. While I disagree with Defendant's characterization of Section 17 as "embedding" an agreement to consent to personal jurisdiction "within a choice-of-law-and-forum provision," I agree the issue raised goes to the merits of the case and is not collateral. Moreover, this Court has previously concluded that the enforceability of a restrictive covenant raises a substantial issue. *Hub Gp., Inc. v. Knoll*, 2024 WL 3950683, at *3 (Del. Ch. Aug. 27, 2024).

4. In my view, however, the Application should nevertheless be denied because the costs of interlocutory appeal outweigh the benefits. Supreme Court Rule 42 identifies eight factors to consider when balancing the costs and benefits of an interlocutory appeal. *See* Supr. Ct. R. 42(b)(iii)(A)–(H). Defendant argues that five factors support certification of an interlocutory appeal here.

5. First, Defendant argues that the Ruling sustained the controverted jurisdiction of the Court and may terminate the litigation. I agree that these factors weigh in favor of interlocutory review. Yet certification is not always appropriate "[s]imply because a ruling on personal jurisdiction was made," *Feldman v. Marks*, 2024 WL 4563851, at *3 (Del. Super. Ct. Oct. 23, 2024), or because a reversal could end the litigation. *In re Fitbit, Inc. S'holder Deriv. Litig.*, 2019 WL 190933, at *2

9

(Del. Ch. Jan. 14, 2019) (ORDER) ("Although review of the appeal could terminate the litigation, this alone is insufficient to warrant certification of the appeal.").

6. Second, Defendant argues that the Ruling decided a novel issue. That is true. It appears no other Court has decided whether a party's consent to personal jurisdiction in a court outside of Washington is invalid under Section 49.62.050. But where a novel issue concerns another state's law, it is "less important" for certification. *In re Asbestos Litig.*, 2023 WL 3093554, at \*2 (Del. Super. Ct. Apr. 25, 2023). It is not clear to me that this factor supports interlocutory review, given the novel issue presented is one of Washington, not Delaware, law.

7. Third, Defendant argues that the Ruling involves a question of law that has been resolved by conflicting decisions of the trial court. That is not true. Defendant argues that the Court's decision to grant the Motion for Preliminary Injunction conflicts with the Court's ruling in *Waters Technologies Corp. v. Conway*, C.A. No. 2025-0366-BWD (Del. Ch. June 24, 2025) (TRANSCRIPT). In *Waters*, the Court denied a motion to preliminarily enjoin a restricted party under a noncompetition agreement from working for a purported competitor because the Court concluded on the record before it that, unlike here, the movant was not likely to succeed in demonstrating that the noncompetition provision was enforceable under Delaware law. Though not central to the analysis, *Waters* also noted that the preliminary relief sought—an order directing the defendant to stop working in a job

10

he had held for four months—was akin to final, mandatory relief and should require a greater evidentiary showing. Here, by contrast, Defendant has not begun employment with Siemens and the effect of the preliminary injunction is to preserve the status quo, not make him quit his current job. Simply put, the Court's "fact-driven analysis . . . does not conflict with prior rulings of this Court." *BankUnited, N.A. v. Shulick*, 2026 WL 264829, at *5 (Del. Ch. Feb. 2, 2026).

8. Finally, Defendant argues that review of the Ruling will serve considerations of justice. Defendant offers two bases for this argument. One is that clarity is needed to decide "the applicable standard and burden of proof for a plaintiff seeking to enjoin the employment of a former employee." Appl. ¶ 18. The standard governing entry of a preliminary injunction, and the applicable burden of proof, are well understood in the Court of Chancery and do not warrant interlocutory review. Defendant's argument is premised on a misunderstanding of a movant's evidentiary burden when seeking mandatory injunctive relief, inapplicable here. Defendant's argument that the Court cannot enter a preliminary injunction when "material facts are in substantial dispute" misstates the law. "To issue a mandatory injunction requiring a party to take affirmative action . . . the Court of Chancery must either hold a trial and make findings of fact, or base an injunction solely on undisputed facts." *C & J Energy Servs., Inc. v. City of Miami Gen. Empls.' & Sanitation Empls.' Ret. Tr.*, 107 A.3d 1049, 1071 (Del. 2014). But a party seeking negative preliminary

11

injunctive relief, like Danaher, needs only demonstrate a likelihood of success on the merits of its claim, the possibility of imminent irreparable harm, and that the balance of equities supports the relief sought. *Id.* at 1066. Danaher met that burden here.

9. Defendant separately argues that interlocutory review would serve considerations of justice because a ruling in its favor on the Motion to Dismiss could resolve the matter while avoiding the "substantial useless effort" of an expedited trial. Appl. ¶ 16. I believe considerations of justice point the other direction. Proceeding to the expedited trial scheduled for November 2026, with any appeal to follow, is the most efficient path forward.

10. On balance, I conclude that the likely benefits of interlocutory review do not outweigh the probable costs, such that interlocutory review would not serve the interests of justice.

11. For the foregoing reasons, the Application is DENIED.

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor